UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JOSEPH EDWARD BOVIN BELSKIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15-cv-00091-JAW |
| | ) | |
| STATE OF MAINE BOARD OF | ) | |
| CORRECTION, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION**

In this action, Plaintiff Joseph Edward Bovin Belskis contends that Defendants violated his civil rights in connection with his pretrial detention at the Somerset County Jail pending the resolution of federal criminal charges. In particular, Plaintiff maintains that Defendants' failure to address his serious medical condition properly and timely constitutes a constitutional deprivation.

Plaintiff has commenced this action against the following Defendants:

(1) The United States Marshal Service;

(2) The Maine Board of Corrections;

(3) Somerset County, Somerset County Sheriff Barry DeLong, Captain Steven Giggey, Major David Allen, Sergeant Eligah Munn, Captain Corey Swope, Deputy Chief Dale Lancaster, and John Doe "Command Staff" within the Somerset County Jail (the County Defendants or the Somerset County Defendants); and

(4) Med Pro Associates, Administrator Teri Thurlow, RN Mary Patterson, PA Robert Ellis, Nursing Supervisor Lisa Cates, RN Rhonda Walters, Trina Littlefield, Jane Doe ("Barbara"), and John Doe ("John") (the Med Pro Defendants).[1]

---

[1] Plaintiff also identifies a defendant named LaPlante. LaPlante and the other individual MedPro defendants, with the exception of Defendant Thurlow, are not identified on the Court's docket as defendants. To avoid confusion, this Recommended Decision will refer to the individuals as referenced in Plaintiff's complaint. The reference to a particular individual as a "defendant" should not be construed as a determination that each individual has been properly named, joined and served as a party-defendant.

The matter is before the Court on motions to dismiss filed by the Somerset County Defendants (ECF No. 17), Defendant United States Marshal Service (ECF No. 28), Defendant State of Maine Board of Corrections (ECF No. 30), and Defendant MedPro Associates (ECF No. 32).[2]  As to the claims that are the subject of certain of the motions to dismiss, Plaintiff has filed notices of voluntary dismissal (ECF Nos. 41 – 43).  Additionally, Plaintiff has filed a motion to amend his complaint (ECF No. 39).

Following a review of the pleadings, and after consideration of the parties' arguments, the recommendation is that the Court grant in part the motion to amend,[3] deny the County Defendants' motion to dismiss, dismiss as moot in part Defendant MedPro Associates' motion to dismiss and otherwise deny the motion to dismiss, dismiss as moot Defendant United States Marshal Service's motion to dismiss, and dismiss as moot Defendant Maine Board of Corrections' motion to dismiss.

## BACKGROUND

The facts set forth herein are derived from Plaintiff's complaint,[4] which facts are deemed true when evaluating the motions to dismiss.[5]  *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998).

---

[2] The Court referred the motions for report and recommended decision.

[3] Although a motion to amend is within the magistrate judge's authority, *Maurice v. State Farm Mut. Auto. Ins. Co.*, 235 F.3d 7, 9 n.2 (1st Cir. 2000), because the motion relates at least in part to an assessment of the Defendants' motions to dismiss, which are addressed in this recommended decision, I concluded that it was appropriate to issue a recommended decision on the motion to amend, to afford the Court, in the event a party objects to this recommended decision, the opportunity to apply the same standard of review for each of the recommended determinations herein.

[4] Plaintiff's proposed amended complaint includes the same factual narration, but modifies some of the allegations regarding certain causes of action and defendants, as will be outlined separately in a discussion of Plaintiff's motion to amend.  The amendments offered by Plaintiff do not materially alter his factual allegations, but modify his claims in response to Defendants' arguments, principally by dropping some claims and Defendants, but also by introducing a new Defendant (the Department of Corrections).  The description of Plaintiff's original allegations herein thus captures the substance of the allegations found in his proposed amended complaint.

[5] The reference to the facts as alleged should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

Plaintiff has been diagnosed with diabetes beginning in 1998. His treatment regimen includes insulin, metformin, and specialized footwear. Diabetes can cause foot ulcers that if left untreated, can lead to osteomyelitis, or infection in the bones of the feet. Plaintiff previously had a toe on each foot amputated due to the effects of diabetes.

Plaintiff was taken into custody and placed at the Oxford County Jail on May 3, 2012, and transferred to the custody of the United States Marshal on May 4, 2012. The Marshal initially placed Plaintiff at the Androscoggin County Jail. After a denial of his diabetic footwear and insulin, Plaintiff developed sores on the bottom of his feet that required debridement at a local medical center. Thereafter, Plaintiff was provided with his specialized footwear and his medication was regularly administered. (Complaint, ECF No. 1, ¶¶ 6 – 12.)

On November 5, 2012, the Marshal transferred Plaintiff to Somerset County Jail. Plaintiff arrived in his diabetic footwear with his diabetes medications. (*Id.* ¶ 13.) Shortly after his arrival, Plaintiff's shoes were taken from him, and he was seen by Defendant Patterson, a nurse. Defendant Patterson told Plaintiff that his diabetes medications would change and informed him that he had a red spot on the bottom of a foot. (*Id.* ¶ 14.) On November 8, Plaintiff requested the return of his shoes, which request was denied. (*Id.* ¶ 15.)[6] Plaintiff was forced to use prison-issued footwear and suffered an injury to his feet, which injury is related to diabetes-related tissue breakdown.

By December, when red spots on his feet developed into wounds and ulcers, Plaintiff repeated his request for his shoes. (*Id.* ¶¶ 16 – 17.) Defendant Ellis, a physician assistant, and Defendant Cates denied the request. (*Id.* ¶¶ 17 – 18.) Defendant LaPlante also issued a denial on December 7, 2012. (*Id.* ¶ 18.)

---

[6] Defendant Cates, a medical supervisor, made entries in Plaintiff's medical file regarding his prior amputations.

On December 16, Plaintiff made a sick call to report an oozing blister on the little toe of his left foot. (*Id.* ¶¶ 20 – 21.) On December 18, Defendant Ellis examined the blisters, but informed Plaintiff that diabetic shoes were not needed. Defendant Ellis instead ordered that Plaintiff was to receive a pair of Crocs to wear. (*Id.* ¶ 22.) According to Plaintiff, when Defendant Ellis stated that diabetic footwear was not required, Defendant Ellis was actually following a department policy that did not permit diabetic footwear. Plaintiff maintains that Defendant Ellis's order was contrary to the medical need for the diabetic footwear, which footwear Defendant Ellis knew was appropriate. (*Id.*) Although Defendant Ellis observed the onset of a diabetic ulcer and infection, he did not arrange for the debridement of the wound, but rather only provided for a new dressing for the wound. (*Id.* ¶¶ 22 – 25.) Plaintiff informed Defendant Ellis of his medical history, of the appropriate standard of care, and of the need for antibiotics to prevent the spread of infection. (*Id.* ¶ 27.) Defendant Ellis, however, failed to order the appropriate treatment. (*Id.* ¶ 28.)

On December 28, Plaintiff was taken to the office of an orthopedist. (*Id.* ¶ 29.) At this time, Plaintiff's toe was very painful and the infection had reached the bone. As of January 7, 2013, Plaintiff had three open wounds and his left foot was swollen and painful. (*Id.* ¶¶ 30 – 31.) Plaintiff was taken to a medical center, where the wounds were debrided, an MRI was ordered, and the infection was treated by Dr. Sauer. The medical record reflects that the wounds were the product of the denial of appropriate footwear. (*Id.* ¶ 33.) Plaintiff returned to the orthopedist on January 17, 2013, to have molds of his feet taken, presumably to be used in the manufacture of new footwear. (*Id.* ¶ 34.) On January 18, Plaintiff had the MRI. (*Id.* ¶ 36.) He saw Dr. Sauer on January 30 in follow-up. In the interim, he received no new medical treatment at the jail although he made a request for wound care within the jail.[7] (*Id.* ¶¶ 35 – 36.)

---

[7] It appears that some new medications were supplied starting in January 2013. (Complaint ¶ 41.)

Dr. Sauer informed Plaintiff that the infection had not improved and that his condition was exacerbated by the lack of treatment within the jail.  Dr. Sauer advised Plaintiff that the likelihood of amputation was high.  (*Id.* ¶¶ 36 – 37.)  Despite Dr. Sauer's assessment, Plaintiff's treatment in the jail did not change.  (*Id.* ¶ 38.)

In February 2013, Plaintiff received new footwear, substantially similar to the footwear taken from him on his arrival at the Somerset County Jail.  (*Id.* ¶ 40.)  Plaintiff also had a consultation with another orthopedist about probable amputation.  (*Id.* ¶ 39.)

On March 1, Plaintiff consulted with the doctor who would perform the amputation and he received antibiotics in anticipation of the surgery.  On March 11, the small toe was amputated and also the fifth metatarsal.[8]  (*Id.* ¶ 42.)  Plaintiff returned to Somerset County Jail and was placed in the infirmary for one week with a prescription of oxycodone for pain.  (*Id.* ¶ 43.)  Although the prescription called for Plaintiff to receive the medication in six-hour intervals, Plaintiff was not administered pain medication on that schedule.  (*Id.* ¶¶ 47 – 48.)

Following the amputation, Plaintiff received his diabetes medications on a more regular basis, had use of his diabetes footwear, and received more attention than prior to the amputation.  (*Id.* ¶ 51.)  Plaintiff's detention at the Somerset County Jail ended on August 30, 2013.  (*Id.* ¶ 50.)

Multiple corrections officers accompanied Plaintiff during his visits for outside care.  Plaintiff asserts that each of these officers was "privy to the instructions given to the Plaintiff to address the reasons for the medical visit" and that each "was in a position to provide notice to supervisors and superiors."  (*Id.* ¶¶ 56 – 57.)  Plaintiff identified the individuals in an exhibit to the complaint.  (Exhibit B, ECF No. 1-3.)

---

[8] Plaintiff states that the amputation was on the right foot, although his earlier allegations described a wound and infection of the left foot small toe.

Plaintiff alleges a number of theories of recovery, including: cruel and unusual punishment; deliberate indifference to medical requirements; denial of due process; violation of rights under the Maine Civil Rights Act; negligence; a municipal policy, practice or custom of denying necessary medical care (including a policy of contracting with a medical provider known to deny necessary care); a failure to train on the part of Defendant MedPro; deliberate indifference under color of state law by Defendant MedPro; violation of state civil rights by Defendant MedPro; medical malpractice; inadequate oversight by the Defendant Marshal Service; Defendant Marshal Service maintaining "a policy of minimal oversight over federal detainees;" and denial of any meaningful process to challenge Defendant Marshal Service's decision related to placement of a prisoner in a particular county jail.  (*Id.*, PageID ## 19 – 24.)

## DISCUSSION

### A.   PLAINTIFF'S MOTION TO AMEND

Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, when a plaintiff seeks to amend a complaint more than 21 days after the filing of a responsive pleading, the plaintiff must obtain the consent of the other parties or leave of court.  Fed. R. Civ. P. 15(a)(2).  Courts are to grant leave to amend "freely" when "justice so requires."  *Id.*; *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

The Somerset County Defendants do not oppose (ECF No. 45) Plaintiff's motion to amend (ECF No. 39) and have filed an answer (ECF No. 46) to the amended complaint.  The MedPro

Defendants filed a limited opposition to the motion (ECF No. 50).  The MedPro Defendants do not object to the motion "to the extent [the amended complaint] only alleges civil rights causes of action under either state or federal law."  (*Id.* at 2.)  They oppose the motion, however, if it is construed to allege a claim for medical negligence.

Because Plaintiff's motion was filed at the initial stages of the process, the amendment will not delay resolution of the matter and will not otherwise prejudice the Defendants.  With one exception related to the Maine Department of Corrections, therefore, it is recommended that the motion to amend be granted.[9]

Through his motion, Plaintiff seeks to join the Maine Department of Corrections as a defendant and asserts that the Department's liability is based on its alleged policy-making. (Amended Complaint at 1, 22, ECF No. 39-1.)  Plaintiff's proposed amendment to join the Department would be futile.  The Department is not a "person" for purposes of 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Additionally, Plaintiff's proposed claim against the Department is in substance a claim against the State and thus is barred by the Eleventh Amendment.  *Brown v. Newberger*, 291 F.3d 89, 92 (1st Cir. 2002); *see also Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 530 n. 23 (1st Cir. 2009).  The bar extends equally to Plaintiff's supplemental, state law civil rights claim.  *Brown*, 291 F.3d at 92.  Because Plaintiff cannot prevail on his proposed claim against the Department, the amendment of Plaintiff's complaint to join the Department would be futile.  Accordingly, Plaintiff's request to amend his complaint to add the Department as a defendant should be denied.[10]

---

[9] Because I recommend that the Court grant in part the motion to amend, and because as to the remaining Defendants, the allegations in the original complaint and the amended complaint are materially the same, I will reference the complaint and amended complaint interchangeably.

[10] If the amendment was permitted, because Plaintiff is a prisoner who is proceeding in forma pauperis, Plaintiff's claim would have been subjected to preliminary screening pursuant to 28 U.S.C. §§ 1915 and 1915A.  After such a

## B.  DEFENDANTS' MOTIONS TO DISMISS

Defendants argue that Plaintiff has failed to allege facts that support an actionable claim. Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted."   In its assessment of the motion, courts must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom."  *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)).  To overcome the motion, a plaintiff must establish that his allegations raise a plausible basis for a fact finder to conclude that a defendant is legally responsible for the claims at issue.  *Id.*

### 1.      Somerset County Defendants' Motion to Dismiss (ECF No. 17)

Plaintiff alleges that the Somerset County Defendants failed to provide adequate care for his serious medical condition and, therefore, violated the Eighth Amendment to the Constitution. Plaintiff's constitutional claim is governed by the "deliberate indifference" standard.  *Caiozzo v. Koreman,* 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment.") [11]

---

review, I would have recommended dismissal on the same basis upon which I now recommend the denial of Plaintiff's motion to join the Department as a party.

[11] The Maine Civil Rights Act, 5 M.R.S. § 4682, provides protection analogous to the federal civil rights statute.  For present purposes the federal and state civil rights claims are treated as coextensive as the parties have made no effort to distinguish between them.  Ordinarily, "[t]he disposition of a 42 U.S.C. § 1983 claim also controls a claim under the MCRA."  *Berube v. Conley*, 506 F.3d 79, 85 (1st Cir. 2007) (citing *Dimmitt v. Ockenfels,* 220 F.R.D. 116, 123 (D. Me. 2004)).

To succeed on a claim of inadequate or delayed medical care, a plaintiff must satisfy both an objective and a subjective standard. *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011). The objective standard evaluates the seriousness of the risk of harm to health. There must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). A medical need is "serious" if it has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would recognize a need for medical intervention. *Leavitt*, 645 F.3d at 497; *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991)). The subjective standard concerns the culpability of the defendant. A plaintiff must present evidence that the defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable." *Feeney v. Corr. Med. Servs.*, *Inc.*, 464 F.3d at 162 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)). The focus of the deliberate indifference analysis "is on what the jailers knew and what they did in response." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002). "[D]eliberate indifference may be found where the attention received is 'so clearly inadequate as to amount to a refusal to provide essential care.'" *Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991).

The Somerset County Defendants argue that Plaintiff has failed to state a claim of deliberate indifference because Plaintiff's allegations establish that he received appropriate medical care. Alternatively, they contend that even if the facts could support an inference of deliberate indifference, dismissal is nevertheless warranted because Plaintiff has failed to allege a

plausible factual basis for individual liability or for a determination that the alleged constitutional deprivation resulted from a policy or custom of the County.

      a.     *Plaintiff has stated a claim of deliberate indifference*[12]

Based on the facts set forth in Plaintiff's complaint, and all reasonable inferences therefrom, Plaintiff alleges the following:  Plaintiff had a serious medical condition (diabetes) that required immediate and regular care; Defendants were aware of the serious condition;[13] the appropriate care included Plaintiff's access to and use of special footwear; the diabetes-related problems with Plaintiff's feet increasingly worsened; Defendants did not respond appropriately, either in time or in substance, to Plaintiff's medical condition; and as the result of Defendants' failure to respond appropriately, Plaintiff suffered an injury, including the need for amputation. Under any reasonable interpretation, the alleged facts are sufficient to state a claim of deliberate indifference.

      b.     *The transporting officers/supervisory officers*

The Somerset County Defendants argue that even if Plaintiff has alleged facts sufficient to satisfy the deliberate indifference standard, Plaintiff has failed to state a claim against the Somerset County Defendants, including the individual Defendants.  The individual Defendants are described as transporting or supervisory officers. As to Defendants Stephen Giggey and Eligah Munn, who transported Plaintiff to medical providers for treatment and were in attendance when he received treatment and related medical assessments, Plaintiff appears to have referenced the transporting officers in part to establish that certain supervisors were aware of the medical providers' findings

---

[12] The discussion of the sufficiency of the allegations of deliberate indifference is applicable to Defendant MedPro and the Somerset County Defendants.

[13] In his complaint, Plaintiff alleges specific involvement with employees of Defendant MedPro in his care and treatment.  Although some of the Somerset County Defendants might not have been directly involved in the care administered to Plaintiff, based on Plaintiff's allegation that some of the Somerset County Defendants transported him to his medical appointments, at the pleading stage, it is plausible that Defendants were aware of the condition.

and recommendations.[14]  Plaintiff, however, also alleges facts that could support a finding that Defendants Giggey and Munn, along with the other individual Defendants, have supervisory responsibilities and were in part responsible for the adoption and implementation of the policies that resulted in the violation of Plaintiff's constitutional rights.

Defendants, however, contend that Plaintiff has failed to state a claim of supervisory liability because he has merely identified the defendants without explaining the role, if any, that each played "in creating and implementing policies regarding the delivery of medical services to inmates at the jail."  (Motion to Dismiss at 4.)  Supervisory prison officials are not liable for acts that violate a prisoner's federal rights unless they participated in some way in the acts.  That is, "a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).  "Public officials may be held liable under § 1983 for a constitutional violation only if a plaintiff can establish that his or her constitutional injury 'resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization.'"  *Ocasio– Hernandez v. Fortuno–Burset,* 640 F.3d 1, 16 (1st Cir. 2011) (quoting *Rodríguez–García v. Miranda–Marín,* 610 F.3d 756, 768 (1st Cir. 2010)).  "Because precise knowledge of the chain of events leading to the constitutional violation may often be unavailable to a plaintiff at [the pleading] stage of the litigation," *id.,* courts often must turn to "judicial experience and common sense," *Iqbal,* 556 U.S. at 679, to make "a contextual judgment about the sufficiency of the pleadings," *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 48 (1st Cir. 2009).  The relevant question when assessing plausibility "is not whether the complaint makes any particular factual allegations

---

[14] In an exhibit to his original complaint, Plaintiff identifies the transporting officers as Andrews, Boone, Giggey, Gilblair, Kline, Maroney, Munn, and Rizzo.  Other than Giggey and Munn, the officers are not named as defendants in either the original complaint or the amended complaint.

but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" *Rodríguez–Reyes v. Molina–Rodríguez,* 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 569 n.14 (2007)).

Here, Plaintiff's complaint, when considered in total and viewed most favorably to Plaintiff, alleges that the named supervisors, through their role in the policy making and implementation, participated at some level, either directly or through "condonation or tacit authorization," in the alleged deliberate indifference as to Plaintiff's serious medical needs.

      c.    *Somerset County*

Defendants argue that Plaintiff has failed to state a claim against the County because he has not alleged facts that would "link the alleged conduct to an official policy or custom of the Somerset County Jail."  (Motion to Dismiss at 5.)  According to the County, the complaint principally concerns the alleged conduct of employees of Defendant MedPro Associates.  (*Id.* at 5 – 6.)

Because a municipality is not automatically liable for a constitutional deprivation that arises from the conduct of municipal employees, Plaintiff must demonstrate that the municipality itself bears responsibility for the constitutional deprivation.  *Rodriguez-Garcia*, 610 F.3d at 769 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  "[L]iability attaches to a municipality under § 1983 'only if the violation occurs pursuant to an official policy or custom.'" *Id.* (quoting *Welch v. Ciampa,* 542 F.3d 927, 941 (1st Cir. 2008)).

Plaintiff has asserted that he was denied necessary medical care pursuant to a policy determination made by one or more policy-making officials with authority over the operation of the Somerset County Jail.  He has, therefore, stated a claim against the County. [15]

---

[15] Claims asserting municipal liability for constitutional deprivations are not subject to a heightened pleading standard. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *Rodriguez-Reyes*,

2.      **U.S. Marshal Service's Motion to Dismiss (ECF No. 28)**

In his original complaint, Plaintiff asserts a fifth amendment due process claim against the United States Marshal Service based on his inability to challenge effectively his contract-based detention in the Somerset County Jail pending the resolution of federal charges.  Through its motion to dismiss, the Defendant Marshal Service argues that this Court lacks subject matter jurisdiction over Plaintiff's claim.  In response to the motion to dismiss, Plaintiff has filed a notice of voluntary dismissal (ECF No. 42) in which he "voluntarily dismisses all claims against the United States Marshal[] Service as plead in the original Complaint."  In addition, in Plaintiff's amended complaint (ECF No. 39-1), Plaintiff does not allege a claim against the Defendant United States Marshal Service.

Pursuant to Rule 41, and subject to certain exceptions not applicable here, a plaintiff may voluntarily dismiss a claim without court order "by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."  Fed. R. Civ. P. 41(a)(1)(A)(i).  "[I]f a defendant files a motion to dismiss rather than an answer or a motion for summary judgment, then a plaintiff retains the right to dismiss the case unilaterally under Rule 41(a)(1)(A)(i) despite the responsive briefing."  *Van Leeuwen v. Bank of Am., N.A.*, 304 F.R.D. 691, 692-93 (D. Utah 2015) (citing *De Leon v. Marcos,* 659 F.3d 1276, 1283 (10th Cir. 2011)). *See also Cabrera v. Mun. of Bayamon*, 622 F.2d 4, 6 (1st Cir. 1980) (noting that the voluntary

---

711 F.3d at 53.  Rule 8(a)(2) simply requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Additionally:

> [T]he power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level.  *Monell*'s language makes clear that it expressly envisioned other officials 'whose acts or edicts may fairly be said to represent official policy,' . . . and whose decisions therefore may give rise to municipal liability under § 1983.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (citing *Monell,* 436 U.S. at 694).

dismissal of one defendant from a multi-defendant case resulted in dismissal without prejudice, but also that the dismissal was by way of stipulation); *Pedrina v. Chun*, 987 F.2d 608, 609 – 10 (9th Cir. 1993) ("We agree with the First, Third, Fifth, and Eighth circuits that Rule 41(a)(1) allows a plaintiff to dismiss without a court order any defendant who has yet to serve an answer or a motion for summary judgment.") (citing, inter alia, *Cabrera*, as well as 9 C. Wright and A. Miller, Federal Practice & Procedure, Civil § 2362 at 149 – 150 (1971) ("The sounder view and the weight of authority" suggest that a plaintiff may use Rule 41(a)(1) to dismiss fewer than all of the named defendants)).

Because Plaintiff filed a notice of dismissal before the Defendant United States Marshal Service filed an answer or motion for summary judgment, and because in the amended complaint Plaintiff does not assert a claim against the Marshal Service,[16] Defendant Marshal Service's motion to dismiss should be dismissed as moot.

3.      **Board of Corrections' Motion to Dismiss (ECF No. 30)**

In his original complaint, Plaintiff asserts that the State of Maine and the State Board of Corrections "function as 'respondeat superior' [sic] and overseer" for the Somerset County Jail. (Complaint at 13, ¶ 3.)   In its motion to dismiss, the Defendant Board asserts eleventh amendment immunity and lack of subject matter jurisdiction.   The Defendant Board also maintains that it is not involved in the day-to-day operation of the county jails or the establishment of county jail policy regarding medical care.   (ECF No. 30 at 1 – 2.)   In response to the motion to dismiss, Plaintiff has filed a notice of voluntary dismissal (ECF No. 43) in which he "voluntarily dismisses all claims against the State of Maine Board of Corrections as plead in the original Complaint."   In

---

[16] Plaintiff's voluntary dismissals are self-executing and do not require a court order.  *Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1077 & n.4 (9th Cir. 1999).

addition, in Plaintiff's amended complaint (ECF No. 39-1), Plaintiff does not allege a claim against the Defendant Board of Corrections.

Because Plaintiff filed a notice of dismissal before the Defendant Board of Corrections filed an answer or motion for summary judgment, and because in the amended complaint Plaintiff does not assert a claim against the Board, the Board's motion to dismiss should be dismissed as moot.

**4.     Maine MedPro Associates' Motion to Dismiss (ECF No. 32)**

The MedPro Defendants contend that Plaintiff's complaint should be construed to allege negligence only.  They argue, therefore, that dismissal is required because Plaintiff did not comply with the prelitigation screening requirements of the Maine Health Security Act, 24 M.R.S. §§ 2501 et seq.  (ECF No. 32 at 2 – 5.)  In response, Plaintiff has filed a notice of voluntary dismissal (ECF No. 41) in which he "voluntarily dismisses all claims against MedPro Associates as plead in the original Complaint for violation of the Maine Health Security Act as a cause of action."  In his amended complaint, Plaintiff continues to assert his deliberate indifference claim against MedPro and MedPro employees.

Plaintiff's notice of voluntary dismissal and his amended complaint establish that Plaintiff has abandoned his medical malpractice (negligence) claim.[17]  The issue is whether Plaintiff has alleged facts sufficient to satisfy the deliberate indifference standard.  As explained in the context of the analysis of the Somerset County Defendants' motion to dismiss, Plaintiff has alleged facts that would support a finding of deliberate indifference.  Plaintiff has thus stated a claim against the MedPro Defendants.

---

[17] If Plaintiff had not abandoned his medical negligence claim, dismissal of the claim was likely warranted.  As a general rule, the failure to comply with the prelitigation screening process required by the Health Security Act bars a medical malpractice action. 24 M.R.S. § 2903; *Demmons v. Tritch*, 484 F. Supp. 2d 177, 179 (D. Me. 2007); *Hewett v. Inland Hosp.*, 39 F. Supp. 2d 84, 87 (D. Me. 1999); *Dutil v. Burns*, 1997 ME 1, ¶ 5, 687 A.2d 639.

**CONCLUSION**

Based on the foregoing analysis, I recommend that the court grant in part and deny in party Plaintiff's Motion to Amend (ECF No. 39).  Specifically, I recommend that the Court permit the amendment except to the extent that Plaintiff requests leave to join the Department of Corrections.

I also recommend that the Court (1) deny the Somerset County Defendants' Motion to Dismiss (ECF No. 17), (2) upon the grant of the motion to amend, dismiss as moot Defendant United States Marshal Service's Motion to Dismiss (ECF No. 28), and Defendant State of Maine Board of Corrections' Motion to Dismiss (ECF No. 30), and Defendant MedPro Associates' request to dismiss Plaintiff's medical negligence claim (ECF No. 32); and deny the remainder of Defendant MedPro Associates' Motion to Dismiss (ECF No. 32).

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 31st day of August, 2015.