UNITED STATES DISTRICT COURT
District of Maine

|  |  |
|---|---|
| JOSEPH BELSKIS,<br>    Plaintiff<br><br>v.<br><br>STATE OF MAINE BOARD OF CORRECTIONS,<br>THE COUNTY OF SOMERSET, MAINE MED PRO<br>ASSOCIATES, TERI THURLOW, THE UNITED<br>STATES MARSHAL SERVICE, ET AL,<br>    Defendants | Docket No. 1:15-cv-00091-JAW |

**COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW**

NOW COME Defendants Somerset County, Barry Delong, Stephen Giggey, David Allen, Eligah Munn, Cory Swope, and Dale Lancaster, by and through undersigned counsel, and hereby move this honorable Court pursuant to Fed.R.Civ.P. 56 for summary judgment in their favor. Filed in connection with this motion is County Defendants' Statement of Uncontested Material Facts pursuant to Local Rule 56(b).

MEMORANDUM OF LAW

I. INTRODUCTION

Plaintiff alleges in the Complaint that he was denied medical care in violation of the Eighth Amendment and the Maine Civil Rights Act.[1]  Plaintiff alleges municipal liability on the part of

---

[1] The Maine Civil Rights Act is co-extensive with civil rights claims brought pursuant to 42 U.S.C. § 1983. See *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008). Accordingly, there is no occasion for separate analysis of claims brought under the Maine Civil Rights Act.

Somerset County and individual liability against Somerset County employees Barry Delong, Stephen Giggey, David Allen, Eligah Munn, Cory Swope, and Dale Lancaster.

## II. FACTS

The undisputed facts of this case are set forth in the County Defendants' Statement of Material Facts (hereinafter "CDSMF ¶ ___"). These Defendants incorporate the CDSMF into this memorandum of law.

## III. LEGAL ARGUMENT

A.   <u>Standard of Review</u>

Summary judgment should be granted when the record evidence demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(a).* The moving party bears the burden of demonstrating the lack of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The record is reviewed in the light most favorable to the non-moving party, and that party must be given the benefit of reasonable inferences drawn from properly asserted facts. *See Nicolo v. Philip Morris, Inc.*, 201 F.3d 29 (1st Cir. 2000). Summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

B.   <u>These Defendants are entitled to summary judgment on Plaintiff's claims because he has not exhausted his administrative remedies under the Prison Litigation Reform Act.</u>

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted." *42 U.S.C. §1997e(a)*. Exhaustion is not left to the discretion of the district court, but is mandatory. *Booth v. Churner*, 532 U.S. 731, 739-741 (2001). A prisoner must also exhaust administrative remedies "even where the relief sought—monetary damages—cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). "[E]xhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under §1983." *Id.* Section 1997e(a) requires "proper exhaustion," which means that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Id.* at 89-93. A prisoner must exhaust all levels of the prison grievance process. *See Johnson v. Thyng*, 369 Fed. Appx 144, 147-48 (1st Cir. 2010). The exhaustion requirement applies even if the prisoner is transferred to a new facility. *See Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002).

  1. Belskis did not exhaust his administrative remedies as required by the Somerset County Jail grievance procedure.

In this case, the Somerset County Jail has a grievance procedure that requires that an inmate first file a Level 1 grievance. *CDSMF, ¶¶ 58, 59*. If an inmate is not satisfied with the response to a Level 1 grievance, the inmate may file a Level 2 grievance. *CDSMF, ¶ 60*. If an inmate is still not satisfied, after receiving a response to a Level 2 grievance, the inmate may file a grievance with the Maine Department of Corrections. *CDSMF, ¶ 61*. Belskis only filed one Level 2 grievance related to issues with his foot. This grievance was dated February 14, 2013. *CDSMF, ¶ 66*. Belskis did not file any grievances with the Maine Department of Corrections concerning issues with his foot at the Somerset County Jail. *CDSMF, ¶ 67*. By failing to grieve

this issue to the Maine Department of Corrections, Belskis failed to exhaust his administrative remedies, and his claims are barred.

C. Defendants Barry Delong, Stephen Giggey, David Allen, Eligah Munn, Cory Swope, and Dale Lancaster are entitled to summary judgment on Plaintiff's claims that they violated his Eighth Amendment rights by denying him medical care.

Plaintiff claims that Delong, Giggey, Allen, Munn, Swope and Lancaster violated his Eight Amendment rights by denying him access to medical care which resulted in the amputation of his right little toe. If the court determines that these claims are not barred by the PLRA, these Defendants are entitled to summary judgment based on qualified immunity.

Government officials who are performing discretionary functions are entitled to qualified immunity if their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity inquiry is a two part test. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Maldonado v. Fontanes*, 568 F.3d 263, 268-69 (1st Cir. 2009). The first part of this inquiry considers whether the facts alleged show that the officer's conduct violated a constitutional right.[2] *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second part of this inquiry is whether that right was clearly established. *Id*. The First Circuit recognizes that the second step of this inquiry has two aspects. *Maldonado,* 568 F.3d at 269. Under one aspect "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202. The second aspect is "whether a reasonable official, situated similarly to the defendants, would have understood that the conduct at issue contravened the clearly established law." *Savard v. Rhode*

---

[2] While the sequence for analyzing qualified immunity, which was outlined in *Saucier* is not mandatory, it is still the preferred method of analysis. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

*Island*, 338 F.3d 23, 27 (1st Cir. 2003) (citing *Saucier*, 533 U.S. at 202).  This part of the inquiry involves evaluation of the facts of the case. *Id.*

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.  It is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.  An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular . . . [action] is legal in those circumstances.  If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Saucier*, 533 U.S. at 205.  The qualified immunity standard is very broad and protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). In this case, Defendants Delong, Giggey, Allen, Munn, Swope and Lancaster are entitled to qualified immunity because there was no constitutional violation and the right in question was not clearly established.

A denial of medical care claim requires evidence of deliberate indifference to a serious medical need of the inmate. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Deliberate indifference means that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Deliberate indifference requires "actual knowledge of impending harm, easily preventable." *Desrosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991).  This is a subjective test. *Farmer*, 511 U.S. at 837-839.  "Even if prison officials know of a substantial risk to inmate health or safety but fail to prevent the harm, they 'may be found free from liability if they respond reasonably to the risk.'" *Giroux v. Somerset County*, 178 F.3d 28, 32 (1999) (citing

5

*Farmer*, 511 U.S. at 844). When considering what constitutes a reasonable response the First Circuit has stated that "a reasonable response clearly defeats the claim of constitutional violation," and "[c]onceivably, a response that was colorable and taken in good faith might still be enough to negate deliberate indifference even if it were inadequate from an objective standpoint (and thus negligent) . . ." *Burrell v. Hampshire County*, 307 F.3d 1, 8 (1st Cir. 2002).

The Plaintiff cannot establish deliberate indifference. While he told jail staff that he needed his diabetic shoes, he admits that he did not tell jail staff why he needed the shoes or what the consequences of not having his shoes might be. *CDSMF ¶¶ 39, 40*. The Somerset County Defendants were not aware of the risk of not providing the Plaintiff with diabetic shoes. *CDSMF ¶¶ 47-49*. They did not have the subjective knowledge to support a finding of deliberate indifference.

Furthermore, throughout his stay at the Somerset County Jail Belskis was seen frequently by medical staff. In fact, on the first day when Belskis arrived at the jail he was seen by a nurse who completed a medical screening form. *CDSMF ¶¶ 5, 12*. Belskis informed the nurse that he had diabetes, needed diabetic shoes, had prior amputations and she noted that he had a healed wound on one of his feet. *CDSMF ¶¶ 13-15*. The evidence establishes that Belskis was seen by a medical provider at the jail on November 5; December 4, 16, 18; every day between December 19 and January 10; and February 7. *CDSMF ¶¶ 12, 20, 23, 24, 26, 30, 35*. He was taken to see medical providers outside of the jail on December 28, January 10, 17, 18, 31 and February 15. *CDSMF ¶¶ 27, 31, 32, 33, 34, 36*.

At the time Belskis arrived at the Somerset County Jail his feet were in good condition. *CDSMF ¶ 15*. He did not notice or inform medical staff of a problem with his foot until December

16, 2012.  *CDSMF ¶ 23*.  After that Belskis was seen by a physician's assistant on December 18, 2012, and then from December 19, 2012, through January 10, 2013, had daily dressing changes.  *CDSMF ¶ 26*.  Less than two weeks after reporting the concern about his toe, he was taken to see Bruce MacDonald at Pine Tree Orthotics for an assessment to see if he needed diabetic shoes.  *CDSMF ¶ 27*.  Bruce MacDonald did not have shoes in stock that would fit Belskis so they had to be made specially. *CDSMF ¶ 29*.  Belskis had a mold of his foot made on January 17, 2013, and he received his new diabetic shoes on February 19, 2013.  *CDSMF ¶¶ 32, 37*.  All of these facts demonstrate that the jail staff responded reasonably to Belskis's medical issues.

Even if Belskis is somehow able to establish that a constitutional violation may have occurred with regard to the provision of medical care under the circumstances of this case, that right was not clearly established. It was not clearly established that Belskis was entitled to additional medical care above what he was offered under the circumstances. If Defendants were mistaken as to the constitutionality of their actions with regard to providing Belskis with medical care, the mistake was reasonable and a reasonable officer would not have believed that their actions were unlawful.  For these reasons, these Defendants are entitled to summary judgment on Plaintiff's claim that he was denied medical care.

D.  <u>The Somerset County Defendants are entitled to summary judgment on Plaintiff's municipal and supervisory liability claims.</u>

  1.  The Somerset County Defendants are Entitled to Summary Judgment Because There Were No Underlying Constitutional Violations.

The Somerset County Defendants are not liable because there were no underlying constitutional violations.  Where the Defendant officers "ha[ve] inflicted no constitutional harm, neither the municipality nor the supervisor can be held liable." *Wilson v. Town of Mendon*, 294

F.3d 1, 6 (1st Cir. 2002). In this case, the individual Somerset County Defendants did not violate Belskis's constitutional rights. *See* Section III(C) (discussing constitutionality of Delong, Giggey, Allen, Munn, Swope and Lancaster's actions in the context of qualified immunity). For this reason, summary judgment should be granted in favor of the Somerset County Defendants on the municipal and supervisory liability claims.

       2.      The Policy, Customs and Practices at Issue in this Case are Constitutional.

In order to establish governmental entity liability, the Plaintiff must either demonstrate that the unconstitutional actions of an employee were taken pursuant to an official policy which itself was unconstitutional, or that those actions resulted from a pattern or practice of widespread and pervasive unconstitutional conduct of which those with final decision-making authority knew or should have known, and yet done nothing to end the practice. *See generally Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 690-91 (1978); *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir.1989). In this case, Somerset County contracts with MedPro to provide medical care to inmates. *CDSMF ¶ 56*. The policies require nursing coverage during normal business hours with at least one health care staff member on call during non-business hours, thereby providing 24-hour coverage 7 days a week. *CDSMF, ¶ 55*. In addition, there is no evidence that there were any unconstitutional customs or practices at the Somerset County Sheriff's Department at all, let alone such practices or customs that were so well settled and widespread that the Sheriff, as the sole final decision-maker, can be said to have had either actual or constructive knowledge of them. Belskis was seen frequently by medical providers and was taken out of the facility several times to see outside medical care providers. As such, Somerset County is entitled to summary judgment on this claim.

      3. There is no basis for supervisory liability.

"Supervisory liability may not be predicated upon a theory of respondeat superior. A supervisor may be found liable only on the basis of his own acts or omissions." *Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 91-92 (1st Cir. 1994) (citations omitted). In order to prove supervisory liability there must be evidence of deliberate indifference. *Camilo-Robles v. Hoyes*, 151 F.3d 1, 6-7 (1st Cir. 1998). Deliberate indifference requires a showing that "(1) [there was] a grave risk of harm, (2) the defendant [had] actual or constructive knowledge of that risk, and (3) [he] fail[ed] to take easily available measures to address the risk." *Id.* The Plaintiff must also demonstrate that there was "a strong causal connection between the supervisor's conduct and the constitutional violation." *Ramirez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 19 (1st Cir. 2014). "The showing of causation must be a strong one, as that requirement 'contemplates proof that the supervisor's conduct led inexorably to the constitutional violation.'" *Id*. at 19-20 *(citing Hegarty v. Somerset County*, 53 F.3d 1367, 1380 (1st Cir. 1995)). "In addition, the supervisor must have notice of the unconstitutional condition said to lead to the claim." *Ramirez-Lluveras*, 759 F.3d at 20. "A plaintiff may prove causation by showing a known history of widespread abuse sufficient to alert a supervisor to ongoing violations. However, proof of that sort must truly show widespread abuse; isolated instances of unconstitutional activity ordinarily are insufficient to show deliberate indifference." *Id*. (citations and quotations omitted).

In this case, the elements of deliberate indifference cannot be met. There is no evidence that Delong, Lancaster, Allen or Swope were aware of a risk of harm or that anything would have given them reason to believe that there was a risk of harm. *CDSMF ¶¶ 39, 40, 47-49.* Moreover, there is no evidence that there were "easily available measures" to address any risk of which Delong,

Lancaster, Allen or Swope may have known. Appropriate policies were already in place. *CDSMF ¶¶ 51-55.* There was a contract with MedPro to provide medical care to inmates and Belkis was seen frequently by medical providers. Furthermore, Delong, Lancaster, Allen, and Swope are entitled to qualified immunity because it was not clearly established that under the circumstances their actions would violate Belskis's constitutional rights. For these reasons, Delong, Lancaster, Allen, and Swope are entitled to summary judgment on this claim.

## IV.  CONCLUSION

For all of the foregoing reasons, the County Defendants ask the Court to enter summary judgment in their favor pursuant to Fed.R.Civ.P. 56 on Plaintiff's Complaint.

Dated: November 21, 2016

                                                    Peter T. Marchesi, Esq.

                                                    Cassandra S. Shaffer, Esq.

                                                    Wheeler & Arey, P.A.
                                                    Attorneys for Somerset County Defendants
                                                    27 Temple Street, P.O. Box 376
                                                    Waterville, ME  04903-0376

UNITED STATES DISTRICT COURT
District of Maine

|  |  |
|---|---|
| JOSEPH BELSKIS,<br>           Plaintiff<br><br>v.<br><br>STATE OF MAINE BOARD OF CORRECTIONS,<br>THE COUNTY OF SOMERSET, MAINE MED PRO<br>ASSOCIATES, TERI THURLOW, THE UNITED<br>STATES MARSHAL SERVICE, ET AL,<br>           Defendants | Docket No.  1:15-cv-00091-JAW |

## CERTIFICATE OF SERVICE

I, Peter T. Marchesi, Esq., attorney for the Somerset County Defendants, hereby certify that:

- County Defendants' Motion for Summary Judgment

has been served this day on Plaintiff by filing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

    Michael Saucier, Esq.   (*msaucier@thompsonbowie.com*)

Copies of the above documents have been provided to the Plaintiff via United States Mail, postage prepaid, at the following address:

    Joseph Belskis
    c/o Pharos House
    5 Grant Street
    Portland, ME 04101

Dated: November 21, 2016

    Peter T. Marchesi, Esq.
    Attorney for Somerset County Defendants
    Wheeler & Arey, P.A.
    27 Temple Street, P.O. Box 376
    Waterville, ME  04903-0376